THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br><br>v.<br><br>JOSHUA D. KUDRAV,<br><br><br>Defendant. | Crim No. 2:20-cr-00109-NBF |

## **DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

NOW COMES, Defendant Joshua D. Kudrav, by and through his undersigned counsel, Laura Beth Gutnick, Adam J. Tragone, and the law firm of Strassburger McKenna Gutnick & Gefsky, submits Defendant's Memorandum in Aid of Sentencing, and in support avers as follows:

On November 6, 2020, Joshua D. Kudrav pled guilty to one count of Possession of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2).

Mr. Kudrav is scheduled to be sentenced on April 8, 2021. Appropriate presentence investigation reports and responses have been filed, and Mr. Kudrav incorporates them by reference. *See* ECF Nos. 39-44. The advisory range agreed to between Mr. Kudrav and the Government is a total offense level of 23 with an advisory range of 46-57 months. On March 15, 2021, in its Tentative Findings and Rulings, this Honorable Court accepted the parties' stipulation to the total offense level of 23. *See* Tentative Findings and Rulings 5, ECF No. 44. Mr. Kudrav now requests this Honorable Court also consider a downward variance in his sentence.

## SENTENCING FACTORS

Pursuant to *Booker v. United States*, 543 U.S. 220 (2005), the Sentencing Guidelines are merely advisory. *See also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*); *U.S. v. Ausburn*, 502 F.3d 313, 325 (3d Cir. 2007). Further, the Court need not assume that the Guidelines are mandatory, nor that they are to be presumed reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009). The Court is also free to discount the Guidelines' recommendation for policy reasons, *see, e.g.*, *United States v. Pape*, 601 F.3d 743, 749 (7th Cir. 2010); *United States v. Corner*, 598 F.3d 411, 414-15 (7th Cir. 2010) (*en banc*), particularly where the Sentencing Commission did not, in adopting the particular guideline, [fulfill] its "characteristic institutional role" of acting based on study, expertise, empirical data, or national experience. *See Kimbrough v. United States*, 552 U.S. 85, 109 (2007). Ultimately, the Court must make an independent determination as to the appropriate sentence, considering the types of sentences available, the relevant factors in 18 U.S.C. § 3553(a), and the arguments of the parties to "make an individualized assessment based on the facts presented" in each case. *Gall v. United States*, 552 U.S. 38, 50 (2007).

Under 18 U.S.C. § 3553(a), the court shall consider:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) the need for the sentence imposed—

   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   B. to afford adequate deterrence to criminal conduct;

   C. to protect the public from further crimes of the defendant; and

   D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) the kinds of sentences available;

4) the kinds of sentence and the sentencing range established for—

    A. the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

        i. issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        ii. that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    B. in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

5) any pertinent policy statement—

    A. issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    B. that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

An analysis of the factors in this case warrants a downward variance.

A.    <u>**The Nature of the Offense and the History and Characteristics of Defendant (18 U.S.C. § 3553(a)(1))**</u>

Mr. Kudrav does not dispute the serious and reprehensible nature of the offense conduct or the Government's presentation of details related to that conduct at the time of the guilty plea. However, we ask this Court to remember that Mr. Kudrav never sent sexually explicit photographs or videos to a minor or of a minor, never had sexual contact with a minor, never was involved in any activities where minors were present and did not share or distribute images in any manner. Moreover, it should be recognized that Mr. Kudrav fully cooperated with law enforcement and the Government since he became aware of its investigation.

By way of example, Mr. Kudrav was compliant with the execution of the search warrant at his residence on October 4, 2019. In addition to allowing law enforcement to search and seize items without interference, he also provided detailed information in an interview with Special Agents Mark Danna and Leonard Piccini, Jr. In that interview, Mr. Kudrav explained, acknowledged, and admitted to his conduct, remorsefully indicating that he was "not proud of looking at child pornography."

Further, Mr. Kudrav, despite the complications resulting from how Court proceedings could be handled considering COVID restrictions, still allowed his case to move expeditiously through the court system saving time and resources by timely participating in proceedings and through remote communication systems when necessary.

Otherwise, Mr. Kudrav is 38 years old. The youngest of three male siblings, Mr. Kudrav was born, raised, and lived his whole life in Pittsburgh. This has allowed him to have a very good relationship with his brothers and his parents. His parents, Jerome and Janet, are elderly and Mr. Kudrav lives with them and assists in their care. In an act of that love and support, Mr. Kudrav's

parents as well has his brother, Ken, have provided this Honorable Court with letters written on his behalf.  Their letters are filed in support of this Memorandum in Aid of Sentencing.

Even though Mr. Kudrav has had a stable and tight bond with his family, he has not always had stable health.  Mr. Kudrav was born with club feet and a heart arrythmia.  He has also suffered from Hepatitis C and is currently medicated for hypertension and hypothyroidism.  Most significantly, Mr. Kudrav is a Type 1 Diabetic and is insulin dependent, currently administering his insulin through a pump.

Aside from his health conditions, Mr. Kudrav has suffered with the demons of alcohol and drug abuse.  When he was younger, Mr. Kudrav experimented with and used various drugs, including, but not limited to, cocaine and heroin.  Remarkably, and as a testament to his own strength and the loving support of his family, he has been clean and sober for over four years, proving that he can take the proactive steps to rehabilitate himself when a problem has been identified.  He attends and participates in Alcoholics Anonymous meetings every week, and in fact, has led these meetings on several occasions.  He credits these meetings as giving him the strength and resolve to remain sober.

After achieving sobriety, Mr. Kudrav reentered the workforce and has consistently worked full-time.  He currently is an Amazon delivery driver for VIP Delivery Solutions in Sewickley, PA where he has proved to be an invaluable asset especially during the COVID-19 pandemic when many Americans were using Amazon to order groceries and other essential items.  At the time of sentencing, he requests this Honorable Court to allow self-surrender so that he can continue to work and maintain an income for as long as possible.  This income will help in paying any restitution, costs, or other assessments imposed by this Honorable Court.

**B.     The Need for the Sentence Imposed, the Kinds of Sentences Available, and the Kinds of Sentence and Range Established (18 U.S.C. § 3553 (a)(2)-(4))**

Mr. Kudrav and the Government have stipulated that the following base offense level, enhancements, and other adjustments set forth in the Sentencing Guidelines are applicable:

| **Base Offense Level** | U.S.S.G. § 2G2.2(a)(1) | 18 |
|---|---|---|
| Prepubescent Minor | U.S.S.G. § 2G2.2(b)(2) | 2 |
| Use of a Computer | U.S.S.G. § 2G2.2(b)(6) | 2 |
| Number of Images (300-600) | U.S.S.G. § 2G2.2(b)(7)(C) | 4 |
| **Adjusted Offense Level** | | 26 |
| Acceptance of Responsibility | U.S.S.G. § 3E1.1(a)-(b) | -3 |
| **Total Offense Level** | | 23 |

Mr. Kudrav's Criminal History Level of I, combined with the total offense level of 23, results in an advisory range of 46-57 months of imprisonment.  This Honorable Court accepted and adopted the total offense level of 23.  *See* ECF No. 44.

It is acknowledged that deterrence and protection of the public are two very important considerations in sentencing, as are the seriousness of the offense and the educational or vocational needs of the defendant.

Mr. Kudrav has never been arrested, let alone incarcerated in his life.  As previously stated, Mr. Kudrav has proven that he can respond appropriately and accomplish positive change when educated on conduct that is improper or, as in this case, illegal.  Mr. Kudrav is open to such education and rehabilitation and has taken steps in that direction.  He initially had a few (monthly) counseling sessions that began shortly after he learned of this investigation.  Those sessions revealed a diagnosis of major depressive disorder and anxiety disorder.  *See* Letter from Associates in Clinical Psychiatry (Nov. 20, 2020) (attached).  After several months of attempting to find a more specialized counselor, he has now been assessed and is being counseled weekly through FAACT, Inc.  *See* Letter from FAACT, Inc. (Mar. 22, 2021) (attached).

With respect to protection of the public, it is unclear that any term of imprisonment is truly necessary to satisfy this need in the case of Mr. Kudrav.  However, based on the advisory guideline range, and the fact this case is not eligible for probation, it is expected that the Court will order a term of imprisonment.  Regardless of the length of the sentence imposed, it is also expected that this Court will order Mr. Kudrav to serve a significant period of supervised release with conditions that would ameliorate any concern that the public would be at future risk.  Further, as acknowledged in the Plea Agreement, and as required by 18 U.S.C. § 3563(a)(8), 18 U.S.C. § 3583(d), and the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16901 *et seq.*, Mr. Kudrav will have to report the address where he will reside and will have to register as a convicted sex offender, conditions that necessarily serve as additional protection to the public.

Considering Mr. Kudrav's educational background and work history, he is a good candidate for and would like to receive any available educational and/or vocational training while imprisoned.  Further, Mr. Kudrav is well aware that his status as a convicted felon will present many obstacles in gaining employment after imprisonment.  He is concerned that computer restrictions will prevent gaining employment as many jobs, even now, rely on computer usage.  He fears that this will only become more widescale as technology progresses and hopes that this Honorable Court will tailor any computer restrictions imposed so that they will not preclude employment opportunities upon his release.

He further hopes and requests that this Honorable Court recommend to the Bureau of Prisons that he be designated to FCI Elkton.  This would allow him to be close to his mother, father, and brothers who will be his support system during his imprisonment and will further support him upon release as he reacclimates into society.  A designation closer to home would be helpful for his parents, as well, as travel is more difficult due to their age.

C.    **Any Pertinent Policy Statement (18 U.S.C. § 3553(a)(5))**

In cases of this nature, the Sentencing Guidelines have come under intense criticism and scrutiny, particularly from the Sentencing Commission and the Department of Justice.  In 2012, the Commission submitted a report to Congress, examining and critiquing federal sentencing policy in child pornography cases.  United States Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses* (2012), available at https://bit.ly/2FJ5OMI.  "The current sentencing scheme results in overly severe guideline ranges for some offenders based on outdated and disproportionate enhancements related to their collecting behavior."  *Report to Congress: Federal Child Pornography Offenses* at 321.

The Department of Justice agreed with the Commission's conclusion:

[T]he Department agrees with the Commission's conclusion that advancements in technologies and the evolution of the child pornography "market" have led to a significantly changed landscape-one that is no longer adequately represented by the existing sentencing guidelines.  Specifically, we agree with the Report's conclusion that the existing Specific Offense Characteristics ("SOCs") in USSG § 2G2.2 may not accurately reflect the seriousness of an offender's conduct, nor fairly account for differing degrees of offender dangerousness.  The current guidelines can at times under-represent and at times *over-represent the seriousness of an offender's conduct and the danger an offender possesses.*

United States Department of Justice, Letter to the Honorable Patti B. Saris, Chair of the United States Sentencing Commission, 1 (March 5, 2013), available at https://bit.ly/3iKzvvu (emphasis added).

The Commission's Report and the DOJ's response further strengthens the belief that the child pornography guidelines do not deserve the same weight inherent in other guidelines because they did not result from careful study based in empirical analysis and national experience; rather they are the result of congressional mandates.  *See*, *e.g.*, *United States v. Huffstatler*, 571 F.3d 620, 622–23 (7th Cir. 2009) (collecting district court cases relying on this rationale); *see also* United

States Sentencing Commission, *The History of the Child Pornography Guidelines* (2009), available at https://bit.ly/3c8lNjS.

In *Koon v. United States*, the Supreme Court of the United States stated "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." 518 U.S. 81, 113 (1996). For example, the guideline is currently being followed in about a third of a child pornography cases around the country.[1] With that in mind, Mr. Kudrav's matter cannot be considered a run of the mill child pornography case, and the intense skepticism behind the rationale of Section 2G2.2, warrants a downward variance. *See, e.g.*, *United States v. Henderson*, 649 F.3d 955, 960 (9th Cir. 2011); *United States v. Dorvee*, 604 F.3d 84, 98 (2d Cir. 2010); *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010); *United States v. Diaz*, 720 F. Supp. 2d 1039, 1041 (E.D. Wis. 2010) (collecting district court cases).

Underlying this trend are several courts' discomfort with Congress's role in fashioning the child pornography Guidelines and criticism of the Guidelines itself as insufficiently grounded in empirical research. *See*, *e.g.*, *Diaz*, 720 F. Supp. 2d at 1041; *United States v. Riley*, 655 F. Supp. 2d 1298 (S.D. Fla. 2009); *United States v. McElheney*, 630 F. Supp. 2d 886 (E.D. Tenn. 2009); *United States v. Beiermann*, No. CR 07–4018–MWB, 2009 WL 467628 (N.D. Iowa 2009); *United States. v. Jacob*, CR 07–2017–MWB, CR 07–2002–MWB, 2009 WL 1849942 (N.D. Iowa 2009); *United States v. Grinbergs*, No. 8:05CR232, 2008 WL 4191145 (D. Neb. 2008). The Court in *United States v. Halliday* noted that, "[w]hile we have rejected the argument that district courts

---

[1] U.S. Department of Justice, Office of the Deputy Attorney General, Letter to Judge Saris (July 29, 2014).

are required to sentence below the Guidelines range in cases involving U.S.S.G. § 2G2.2, we have noted that such criticism has been 'gaining traction.'"  672 F.3d 462, 474 (7th Cir. 2012).

For example, in *Dorvee*, the Second Circuit held that a within-Guidelines sentence for distribution of child pornography was substantively unreasonable.  In so doing, the court noted that the Guidelines have been revised upwards multiple times as a result of congressional directive, although "the sentencing commission was neither informed nor consulted on the passage of these changes, and the legislative history surrounding them offered no study or empirical justification for them."  616 F.3d at 184 n.7.

Recent statistics from the Sentencing Commission show that sentences outside of the Guidelines Range are more common in child pornography offenses than any other type of offense.  United States Sentencing Commission Quarterly Data Report Fiscal Year 2018, U.S. Sentencing Commission, p. 17.  In that reporting period, courts sentenced within the Guidelines in merely 28.5% of cases.  *Id.*  Variances below the Guidelines Range were given in 62.7% of cases—more than in any other type of offense.  *Id.*

Further, the Guidelines require significant enhancements for conduct present in virtually all cases.  In this case, for instance, an enhancement of 2 levels for possession of material involving children under age twelve, an enhancement applicable in 94.1% of sentences under § 2G2.2 in fiscal year 2018, and 2 levels for use of a computer, applicable 96.6% of the time.  *See* United States Sentencing Commission, Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2018 45-46, available at https://bit.ly/2SMJSUg.  As the Second Circuit explained in *Dorvee*, even for an offender with no prior record, based solely on characteristics that are all but inherent to the crime of conviction, would result in an approach fundamentally inconsistent with § 3553(a), and could even result in an advisory sentence close to the statutory maximum.  604 F.3d at 96.

Aside from applying in virtually all cases, these enhancements suffer from additional flaws. As the Sentencing Commission noted, the use of a computer enhancement fails to distinguish serious commercial distributors of online pornography from more "run-of-the-mill users." *Id*. at 95-96.  Courts have noted that the "enhancement does not make a great deal of sense because online pornography generally comes from the same pool of images found in specialty magazines or adult bookstores." *United States v. Tews*, No. 09-CR-309, 2010 WL 1608951 at *4 (Apr. 20, 2010 E.D. Wisc.); *see also United States v. Hanson*, 561 F.Supp.2d 1004, 1009-10 (E.D. Wisc. 2008).  Indeed, this enhancement "lack[s] value as a reliable proxy for culpability or as a means to gauge the relative culpability of [] offenders."  *United States v. Gellatly*, No. 8:08-cr-50, 2009 WL 35166, *9 (D. Neb. Jan. 5, 2009).   In today's world, the vast majority, if not all, of child pornographers obtain their material using a computer.  It defies logic to apply this enhancement when "[i]nternet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court."  *United States v. Mallat*, No. 4:13-cr-3005, 2013 WL 6196946, *16 (D. Neb. Nov. 27, 2013).  *See also United States v. Marshall*, 870 F.Supp.2d 489, 493–95 (N.D. Ohio 2012); *United States v. Stern*, 590 F.Supp.2d 945, 961–63 (N.D. Ohio 2008) (collecting cases discussing use-of-a-computer enhancement creates unwarranted sentencing disparities).

### D.     The Need to Avoid Unwarranted Sentence Disparities Among Similar Offenders (18 U.S.C. § 3553(a)(6))

This Honorable Court, when determining the sentence to impose, must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  A downward variance from the range adopted and accepted by this Honorable Court's in its Tentative Findings and Rulings would be appropriate and consistent when compared with sentences imposed for similarly situated defendants.

A Court within this District gave a considerable downward variance in a case, charged under the same section as Mr. Kudrav, where the offense conduct included possession of thousands of images and movies of young children being abused. *See* Sentencing Mem. of the United States at 5-6, *United States v. Martin*, No. 1:18-cr-00035-DSC (W.D. Pa. April 4, 2019), ECF No. 20. The Government and Mr. Martin agreed that a total offense level of 24 (correlating to an advisory guideline range of 51-63 months) was appropriate in the case. which included a five level enhancement for possessing more than 600 images pursuant to U.S.S.G. 2G2.2.(b)(7). *Id.* at 4. Ultimately, the Court sentenced him to 30 months of imprisonment, a 21-month variance from the low end of the agreed upon range. Obviously, the Court felt that this sentence was sufficient, but not greater than necessary to satisfy the goals of sentencing. *See* J. in a Criminal Case at 2, *United States v. Martin*, No. 1:18-cr-00035-DSC (W.D. Pa. April 22, 2019), ECF No. 25. Mr. Kudrav suggests that a similar sentence would be appropriate in his case.

Mr. Kudrav also asks that this Honorable Court consider the variance it gave in the case of Mr. Desalome. *See* J. in a Criminal Case at 2, *United States v. Desalome*, 2:17-cr-00272-NBF (W.D. Pa. May 3, 2019), ECF No. 78. Mr. Desalome, just like Mr. Kudrav, was charged with Possession of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). However, Mr. Desalome's conduct was discovered by an undercover detective when the detective connected to Mr. Desalome's computer through a peer-to-peer sharing network (P2P) and downloaded two files from Desalome's computer, including a video of "Jenny," a bound child victim. Gov't's Sentencing Mem. 3-4, *United States v. Desalome*, 2:17-cr-00272-NBF (W.D. Pa. May 3, 2019), ECF No. 69. Mr. Kudrav, at no time, used a peer-to-peer sharing network.

12

Mr. Desalome faced an advisory guideline range of 63-78 months of imprisonment with a total offense level of 26. *Id.* at 1. However, this Honorable Court sentenced Mr. Desalome to 24 months of imprisonment. J. in a Criminal Case, *supra*, at 2.

    **E.**    **The Need to Provide Restitution to Any Victims of the Offense (18 U.S.C. § 3553(a)(7))**

Pursuant to the Plea Agreement, Mr. Kudrav has agreed to pay appropriate restitution.

The only victim, who has requested restitution, is "Violet" through her counsel, Carol Hepburn, Esq. It is agreed that $3,000.00 is an appropriate amount of restitution to settle "Violet's" claims, and Mr. Kudrav has agreed to pay this amount at the time of sentencing. *See* Stipulation To Restitution Req. as to "Violet" and General Objs., ECF No. 46.

## <u>CONCLUSION</u>

In consideration of the relevant sentencing factors set forth in 18 U.S.C. § 3553(a), Mr. Kudrav respectfully requests this Honorable Court consider a downward variance from the advisory guideline range of 46-57 months of imprisonment.  This sentence would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

<div style="margin-left: 40%;">

Respectfully submitted:

/s/ *Adam J. Tragone*　　　　　　　
Laura Beth Gutnick
PA I.D. No. 81999
Adam J. Tragone
PA I.D. No. 322479
lgutnick@smgglaw.com
atragone@smgglaw.com

STRASSBURGER MCKENNA
GUTNICK & GEFSKY
Four Gateway Center, Suite 2200
444 Liberty Avenue
Pittsburgh, PA  15222
412-281-5423
412-281-8264 fax

*Counsel for Defendant, Joshua D. Kudrav*

</div>